# SERCARZ & RIOPELLE, LLP

810 SEVENTH AVENUE, SUITE 620
NEW YORK, NEW YORK 10019
P (212) 586-4900
F (212) 586-1234
www.sercarzandriopelle.com

ROLAND G. RIOPELLE
MAURICE H. SERCARZ*

———

ROBERT CALIENDO
GIULIANA E. GRAHAM

*ADMITTED IN NY & NJ

June 26, 2015

**BY ECF**

Hon. Eric N. Vitaliano
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *U.S. v. DiScala*, et al., 14 CR 399 (ENV)

Dear Judge Vitaliano:

I and my associate Robert Caliendo represent Kyleen Cane in the referenced case. We write in reply to the government's June 24 letter opposing Ms. Cane's application to modify her bail so that she may be permitted to travel to Scotland for a limited period. For the reasons stated herein, and in our prior submissions, we respectfully submit that because Ms. Cane poses no flight risk, no new conditions are necessary to "reasonably assure [her] appearance… as required." 18 U.S.C. § 3142(g).

In its June 24 letter, the government again provides no facts that indicate Ms. Cane is a flight risk. The government cites no foreign bank account, the establishment of a foreign domicile, or other acts (such as transfers of funds to a foreign jurisdiction, or family located in a foreign jurisdiction from which there is no extradition) that support an inference that Ms. Cane is about to flee. Instead, the government just points to Ms. Cane's financial resources and argues that these resources give her the means to violate the terms of her bail. To the contrary, during the extended pendency of this case, Ms. Cane has met all her bail conditions, and her liquid assets have been significantly depleted as she has funded her defense. Now that her liquid assets have been significantly depleted, the defendant's ability to flee using those assets has been impeded. The proposed trip – to a country from which

extradition is available – offers Ms. Cane no greater opportunity to flee than she has now.  And Ms. Cane has shown no propensity to flee during the past year while she has been on bail.

The government posits that Ms. Cane's real estate holdings "may be used to support a comfortable life abroad." ECF No. 146, pp. 2-3. This ignores the fact that these assets are all highly illiquid.  These assets are both leveraged and (in most cases) owned by Ms. Cane together with several different, unrelated partners.  Assets held in partnership can't be easily liquidated by Ms. Cane, so they provide her no basis to flee in this case.

The government also ignores our previous argument that, "Ms. Cane has no intention of abandoning… her 80 year old step-mother, nor her other son who lives in Las Vegas and Oregon (where he attends college), and who requires her support and attention in the U.S." ECF No. 142.  Ms. Cane's family and friends are here.  She has no one to flee to.  And her son's residence in Scotland will not provide her a venue to flee to, because the United Kingdom will extradite her if she goes to Scotland without permission.

Moreover, the government ignores the fact that Ms. Cane has not sold or even marketed *any* of her real estate over the past year, even as the date for her trip to Scotland is quickly approaching. Nearly all of the properties she owns or has an interest in are encumbered by mortgages and/or joint ownership, making it very unlikely that they could be sold quickly or easily to support a life on the run. The government's argument that Ms. Cane's real estate holdings suggest that she has the means to flee is simply not factual or persuasive, given Ms. Cane's inability to liquidate or utilize the properties. It also means that, even if she wanted too, Ms. Cane could not put any of these leveraged and co-owned properties up for an additional bond as the government has now suggested.  She cannot pledge these properties, or her interests in them, without the consent of her partners.

The government also speculates that Ms. Cane may have significant liquid assets which would allow her to flee, citing assets she reported in a statement taken over a year ago. Unfortunately, this ignores the fact that the government's published allegations have destroyed Ms. Cane's law practice, and thus she now earns nothing from it. Moreover, most of the liquid assets she had then have been used to pay lawyers and her living expenses. Ms. Cane's reduced liquidity makes it *more* difficult for her to flee, because she does not have any ability to "support a comfortable life abroad." ECF No. 146, pp. 2-3.

2

As an alternative to prohibiting Ms. Cane from taking her son to Scotland, the government now wants her to provide "updated and itemized information about her assets, including current appraisal values of her properties." ECF No. 146, pp. 2-3. This expensive and time consuming undertaking alone may render the trip impossible if Ms. Cane is unable to complete these tasks in time. The contemplated trip would occur from August 14-24, 2015.  Ms. Cane still does not even have a passport, which itself may take four to six[1] weeks to obtain, after her expired passport is returned to her by the government.

More importantly, there really isn't any need for Ms. Cane to provide updated information concerning her real estate holdings.  The government knows what Ms. Cane's assets are, and it can easily obtain much of the information it seeks by consulting a variety of publicly available websites and databases. By checking these databases, the government can confirm that the ownership of the real estate holdings has not changed and that the holdings are encumbered.  The government can also obtain an approximate value for the real estate holdings through a basic internet search.  This is all the information the government needs to confirm that Ms. Cane's real estate holdings have not been liquidated and can't be liquidated easily.  There is no reason to put Ms. Cane to the expense and the time delay of obtaining appraisals and title searches for her real estate holdings at this point.

The government also demands an "increase [in] the value of the defendant's secured bond" and "additional properties [posted]." ECF No. 146, p. 3. It states no reason why this is necessary to secure Ms. Cane's return from Scotland, but simply asserts that requiring "the defendant to post additional properties to cover the [increased] bond in its entirety [will] ensure her return to the United States."

The Court has already increased Ms. Cane's bail conditions once.  Initially, Ms. Cane was released without bond on her own recognizance.   At that point, the government raised a panic alarm that she might flee if not further restricted.  She then voluntarily came to New York and agreed to provide a million dollar bond, security and two co-signers to secure her bail.  The government demanded and received from Ms. Cane, without protest, security in her only unencumbered property not co-owned with others, and now, even with a perfect record of compliance with the previously set, stringent bail conditions, the government has, without making any factual showing that Ms. Cane is preparing to flee, simply demanded more.  The Pretrial Services Officer, who has gotten to know Ms. Cane during the year she has been released on bail, has no objection to Ms. Cane's travel request, and he does not suggest that there is any need to increase the restrictions included in Ms. Cane's bail

---

[1] http://travel.state.gov/content/passports/english.html/

conditions.  We respectfully submit that the position of Ms. Cane's Pretrial Services Officer makes sense in the present circumstances.  Frankly, Ms. Cane's perfect record on bail over the past year suggests that the bail restrictions on her should be loosened not tightened.

If the court is concerned that Ms. Cane is truly a flight risk, she is ready to offer a variety of reasonable conditions to ensure her return from Scotland.

First, if the government wants to pay to send an agent to Scotland with Ms. Cane and her son, to monitor Ms. Cane during her trip, it is free to do so.  Ms. Cane volunteers to give the government an itinerary of her trip – what airline and flights she will take, and what hotel she will be staying in, while she is in Scotland.  Any agent who wishes to monitor Ms. Cane's trip can travel with Ms. Cane on the flight to Scotland, and make a reservation in the hotel where she will be staying.  Ms. Cane is willing to check in with the agent each day she is in Edinburgh, so that the agent can be sure that Ms. Cane returns to the United States.

In addition, while I wouldn't presume to tell the government how to do its business, many reincarnations ago when I was an Assistant United States Attorney it was possible to put a lookout for defendants at foreign airports and have them arrested if they tried to fly out of the airport where the lookout was posted.  I presume that, since 9/11, the government's ability to have defendants monitored and arrested abroad has been beefed up considerably.  So it is inconceivable to me that the government cannot have an alert posted at all airports in the United Kingdom, and thereby prevent Ms. Cane from flying out of any such airport to any unauthorized destination at any unauthorized time.

Alternatively, Ms. Cane is willing to check in with any person in Edinburgh, Scotland the government designates, so that the government can be sure Ms. Cane remains on the proposed trip while abroad, and then returns to the United States on schedule nine days later.  Again, speaking from ancient experience, the Federal Bureau of Investigation has agents in the UK, and has a relationship with Scotland Yard, such that it could arrange for an agent in Scotland to monitor Ms. Cane if it believes that is truly necessary.

Finally, Ms. Cane is also willing to contact her pre-trial officer daily while she is abroad, to confirm that she is in Scotland throughout her trip.  We propose that Ms. Cane do this by sending her Pretrial Services Officer a picture of herself in Edinburgh each day she is there, together with a picture of a local Edinburgh newspaper with the date visible.  This is an inexpensive way to confirm that Ms. Cane is abiding by her proposed travel schedule, for the purpose she has stated.  It is my view that this is all

4

that is necessary under the circumstances, after the government has been provided with an itinerary and a flight schedule.

With these proposed alternatives, we respectfully suggest that the government's proposals to increase Ms. Cane's bail with further onerous and unrealistic restrictions on her assets are unnecessary to secure Ms. Cane's appearance in court.

### Conclusion

For all the reasons stated herein and previously, we respectfully ask the Court to grant defendant's travel application.

Respectfully submitted,

Roland G. Riopelle and
Robert Caliendo
Sercarz & Riopelle, LLP
810 Seventh Avenue, Suite 620
New York, NY 10019
212 586 4900